RICHARD HOGEBOOM, APPELLANT, V. ELIZABETH ROB-
ERTSON ET AL., APPELLEES.

FILED SEPTEMBER 19, 1894.    No. 5711.

Sufficiency of Evidence to Support a Finding that a
Child's Title to Land Was Not Held in Trust for
Her Father: ESTOPPEL. The evidence in the case examined,
and *held* sufficient to sustain the findings and judgment of the
court below.

APPEAL from the district court of Douglas county.
Heard below before IRVINE, J.

*A. S. Churchill* and *George A. Magney,* for appellant.

*Gregory, Day & Day, contra.*

HARRISON, J.

On the 20th day of February, A. D. 1890, the plaintiff
and appellant herein filed in the district court of Douglas
county the following petition:

"The plaintiff presents this his petition against the de-
fendants and shows to this court: That on or about the
1st day of June, 1857, the plaintiff purchased from one
Louis Waldo, the pre-emptor, patentee, and owner thereof,
the northeast quarter of the northeast quarter of section 5,
township 15, range 13 east of the 6th principal meridian,
the same being situate in the county of Douglas and state
of Nebraska; that solely as a matter of convenience the
plaintiff procured the title of said land to be placed in the
name of his daughter, Harriette Hogeboom; that said
Harriette Hogeboom afterwards intermarried with one
Theodore Robertson, and afterwards, to-wit, in the year
1875, departed this life, leaving her surviving the above
named defendants as her children and sole heirs at law;
that the said Harriette Hogeboom never paid any consid-

eration whatever for the said premises, and during their lifetime neither she nor her husband ever assumed, exercised, or claimed any ownership, title, interest, or right in or to said premises, but always claimed and admitted that the plaintiff was the rightful owner of the same; that the entire consideration therefor was paid by this plaintiff, and no part thereof in any way was paid or advanced by the said Harriette Robertson, or any person on her behalf; that since the death of the said Harriette Robertson, born Hogeboom, her children and heirs at law have not, nor has either of them, assumed or exercised any ownership whatever over said land or any part thereof; that during the sixteen years after the purchase, and before the death of the said Harriette Robertson, born Hogeboom, and during the fifteen years since her death, as aforesaid, and ever since the purchase of said property, the plaintiff has had open, notorious, peaceable, undisputed, actual, and continuous possession of the said premises, and has exercised acts of ownership over the same, and has paid the taxes thereon, except that in the year 1871 the county treasurer of Douglas county sold to Wilson Reynolds said premises for the unpaid taxes, as alleged, of 18—, and the said Wilson Reynolds thereafter, to-wit, on the 14th day of November, 1883, quitclaimed said premises to the defendants; but the plaintiff claims and avers that the said deed of said county treasurer was utterly void, worthless, and of no effect, and conveyed no title whatever to said premises and gave said Reynolds no title whatever which would be the subject of conveyance.

"Wherefore the plaintiff asks for a decree of this court whereby it may be ascertained that the said defendants hold the legal title to the said property in trust for this plaintiff, and the said defendants in and by said decree may be ordered and required to convey said premises, or such portion thereof as the court shall direct, to the plaintiff by a proper deed, or that in default the sheriff be required to

make such conveyance, or that the decree stand therefor, or for such other or further order or decree, or both, as to this court shall seem meet and as good conscience and equity may require."

To which the defendants filed an answer, in which they admitted the entry of the land described in the petition by Louis Waldo and its conveyance afterwards to Harriette Hogeboom, her marriage with Theodore Robertson, the death of their father and mother, Theodore and Harriette Robertson, during the year 1875, and the fact of the defendants being the children and heirs at law. The further matters of defense are stated as follows:

" But these defendants most expressly deny that this plaintiff was the real owner of said premises, or that it was so admitted or acknowledged at any time by their said mother, the deceased, or that she held the title in trust for plaintiff, or that plaintiff had any right, interest, or claim in or to said premises, or that plaintiff had been in peaceable and uninterrupted possession of the same, in his own right or for himself, at any time within the last ten years, or at any other time.

" 3. But defendants allege the fact to be that shortly after the death of their said mother, Harriette Robertson, as aforesaid, to-wit, in 1879, the plaintiff caused himself to be appointed guardian of these defendants by the county court of Sarpy county, Nebraska, and by virtue of such guardianship and under the powers so conferred the said plaintiff, for and in behalf of these defendants as his said wards, entered into possession of said premises as for and as the property of these defendants, and in no other way, manner, or right whatever; and these defendants therefore say that their possession has been open, exclusive, and adverse to any and all claim of plaintiff, as set forth in his petition, for more than ten years prior to the instituting of this cause of action, and that any and all right has been long since barred by the statute of limitations.

"4. These defendants confess that they are not at this time advised as to who furnished the means for the purchase of the aforesaid lands from said Waldo; but defendants say that if it is in any way made to appear that the money was furnished by plaintiff, which for the purpose of putting him, the plaintiff, upon full proof, is hereby expressly denied. The same was so furnished and paid as a gift and advancement to their said mother, and that said gift and advancement, if so made, has been at divers times and was ratified and confirmed unto said Harriette Robertson and to these defendants.

"5. And for other and further answer the defendants say that plaintiff ought not to be permitted to further prosecute this action, in this: The said plaintiff, while acting for these defendants as their guardian, has, at sundry times and divers ways, represented the property to be the property of these defendants, both in court and under oath, and by virtue of which he, the said plaintiff, has obtained both order and decree of court; and more especially the said plaintiff, as guardian aforesaid, did present his petition to this court upon the 30th day of June, 1883, stating, under oath, that the land in question was the property of these defendants, that they were minors, and that it was for their interest that the same be sold; that permission was given plaintiff, as guardian, to mortgage said lands for the benefit of his said wards, these defendants, in the sum of $1,000; and that afterwards, to-wit, in October of said year, he, the plaintiff, as such guardian, caused the same to be mortgaged as the property of these defendants for the sum of $1,000, whereby the plaintiff is wholly estopped from asserting any right or interest in and to said lands.

"6. And for other and further matters of defense these defendants allege that the said lands, for all the years since the death of their said mother up to the present time, were under improvements, susceptible of yielding large rents and

Hogeboom v. Robertson.

profits, and was so rented by the plaintiff as guardian of these defendants, the exact amount of which these defendants are not able to state, but the said rents, issues, and profits so obtained by plaintiff were more than sufficient to meet the expenses, burdens, and taxations imposed upon said estate, and for which plaintiff has in no manner accounted to these defendants.

"7. But notwithstanding all and singular the matters aforesaid the said plaintiff did cause these lands, under and by order and license obtained from this court, and by virtue of his powers as guardian of these defendants, to be mortgaged, in fact or in pretense, to one Jane Pritchard for the sum of $1,000, which said mortgage was executed as of the date of October 20, 1883; and as to whether the said plaintiff obtained any money for the said pretended mortgage these defendants are not able to state, but most positively allege that plaintiff in no manner ever accounted for same, or in any manner used it for the benefit of these defendants.

"8. That afterwards, to-wit, the year 1886, the said Jane Pritchard brought her action to foreclose said mortgage in this court, and did obtain decree of foreclosure and an order for sale of the lands in question to satisfy said mortgage claim; and defendants charge the fact to be that the plaintiff, all the time holding the moneys of these defendants, caused and permitted the said lands to go to sale, and, as these defendants charge, for the purpose of obtaining possession of the same in his own right, he, the said plaintiff, entered into collusion with one Egbert E. French and induced and caused the said French to become the purchaser of the west one-fourth of said premises at said foreclosure sale, bidding and ostensibly paying therefor the sum of $3,000, and thereupon the sheriff caused a deed to be made to the said Egbert E. French for the west one-fourth of said land; and defendants say that though the title is still in the name of the said Egbert E. French, the said plaintiff asserts ownership and control of the same,

and these defendants charge the facts to be that while the said French was the nominal purchaser, the same was done for, and in collusion with, and at the instigation of, plaintiff, and for the purpose of enabling plaintiff to acquire an interest in and to the same adverse to these defendants in and to the west one-fourth of said premises, and the said plaintiff is now asserting ownership thereto by reason thereof; but defendants charge that the said sale is fraudulent and void as to these defendants by reason of the facts aforesaid.

"9. And defendants allege that as a part of and carrying out the scheme, as aforesaid, the said French, at the instance of the plaintiff, caused to be paid into the clerk of this court the sum of $3,000, the price of which the west one-fourth of the land in controversy was sold, and, after satisfying the amount for which the said mortgage sale ordered and all costs, there remained the sum of $1,771.51, which the said plaintiff receipted for and obtained from the clerk of said court under and by virtue of his guardianship of these defendants, and defendants say that the moneys so received by this plaintiff from the estate of these defendants, and for which he has in no manner accounted for, exceeds the sum of $3,500.

"Wherefore the defendants pray that this answer may be treated, allowed, and considered as also a cross-bill of these defendants; that they have leave to make the said Egbert E. French a party hereto, and that he be required to answer to all the things and matters herein alleged against him; that the said deed of the west one-fourth of N. E. of N. E. of section 5, township 15, range 13, so made by the sheriff of Douglas county to the said French be held for naught, and that the title and right of these defendants be confirmed to the whole of said forty acres as aforesaid; but in the event the court shall find the said French to be a good-faith purchaser of said west one-fourth of said land, then defendants pray that the said plaintiff

may be required to account for all and singular the moneys obtained by mortgage and sale of the said land aforesaid, as well as all rents, issues, and profits arising therefrom while he was so acting as the guardian of these defendants; and such other and further relief as shall to the court seem just and equitable."

To this answer there was evidently a reply, which is not in the record, but there appears the following statements in reference to it: "Afterwards, on the 22d day of December, 1890, a reply was filed herein, which said reply was, at the time of making the transcript, missing from the files." At the time the case was taken up for trial the following order was made, as appears from the record: "This cause now coming on for trial, on motion of defendants, it is by the court ordered that the counter-claim of the said defendants filed herein be, and the same is hereby, dismissed without prejudice."

A trial of the issues thus completed and presented resulted in the following decree in favor of defendants, viz.:

"This cause coming on this day for final determination before this court, the same having been heretofore fully submitted upon all the proofs and arguments of counsel, and the court, being fully advised in the premises, finds that the plaintiff's bill is without equity, and for that reason his cause ought and should be dismissed from this court; and the court further finds that the defendants dismissed their counter-claim without prejudice in this cause and stood wholly upon the answer and defense as defense herein. It is therefore, ordered, adjudged, and decreed that the plaintiff's bill be dismissed for want of equity and that defendants recover from the plaintiff their costs taxed in the sum of $———, and that execution issue therefor; to all of which order, finding, and decree the plaintiff excepts, and has forty days from the rising of this court to prepare and present his bill of exceptions, and the amount of bond in case of appeal is fixed at $1,000."

From this disposition of the case the plaintiff has perfected an appeal to this court. By the voluntary dismissal or withdrawal of the portion of the answer which contained matter upon which defendants based a claim for affirmative relief, and the admissions of the answer, all, or practically all, questions were eliminated from the case except the one in reference to the position in which Harriette Robertson, or Hogeboom, was placed relatively to the plaintiff by the transaction which resulted in a deed to her from Louis Waldo, whether the conveyance was made to her of the title for him, or was there sufficient evidence to show that the conveyance was one to her in trust for him? The rules of law applicable to exceptions to certain portions of the testimony which were admitted subject to objections, and also such as are pertinent to the other points raised by the evidence, are well presented and argued in the briefs filed by counsel for the respective parties; but in a decision of the case, agreeably to our views, a discussion of the law points will not be necessary, as we are satisfied that a true determination of the controversy may be reached from a consideration of the facts developed. The plaintiff testified in regard to what were his intentions at the time he purchased the land and had the conveyance made to his daughter, all of which testimony was objected to by defendants as incompetent, and admitted subject to the objections. Granting that it was competent, which we do not decide, we have the following:

Q. To whom was the land deeded? Who was the grantee named in the deed?

A. I had it deeded to my younger daughter.

Q. What is her name?

A. Harriette.

Q. How old was she at that time?

A. I think fifteen or sixteen.

Q. Did she afterwards marry; and if so, who?

A. Yes, sir.

Q. Now, Mr. Hogeboom, you may state what your object was in having it deeded to your daughter.

A. Now it is a good while ago, and it is almost impossible for me to state what my object was. I suppose, I guess at that time we had some object in it. Maybe a matter of convenience or something of that kind; but positively I could not go back and say just what my object was. I took it as a matter of convenience more than anything else.

Q. You may state what your intentions were at the time in having it deeded to her.

A. I cannot say what the intention was, unless it was to keep me from trading it off, or making general dealing with it in other matters. It is property I expected to keep and hold onto without making any sale, or entering it into any other trade I was then making. I do not know any other object I could have had. It might be a barrier with me on that point.

It was also shown that the plaintiff occupied the land during one or two years after the purchase and improved it to some extent; that thereafter for a number of years he had apparent control of it and leased it to different persons and collected the rent. On the other hand, the evidence discloses that his daughter Harriette, to whom the deed was made, was, at the time of such conveyance to her, a minor; that she remained with him until her marriage to Robertson; that in 1879, after her death, which occurred in 1875, plaintiff was appointed guardian for the defendants, the children of his daughter, who were then minors, and on June 30 filed a petition, as such guardian, in the district court of Douglas county, which was as follows:

"Now comes Richard Hogeboom, guardian of the above named persons, and represents unto said court that said Richard H. Robertson is a minor under the age of twenty-one years; that said Elizabeth Robertson is also a minor under the age of eighteen and unmarried; that John Rob-

ertson is a minor under the age of twenty-one years, and that said Bertha Robertson is also a minor under the age of eighteen and unmarried; that the father and mother of said minor persons are dead; that on or about the 16th day of September, A. D. 1879, your petitioner was duly appointed guardian of the persons and property of said minors, and is still such guardian; that the only estate, real or personal, belonging to said minors consists of forty acres of land, or thereabouts, situated in Douglas county, and state of Nebraska, described as follows, to-wit: The northeast quarter of the northeast quarter of section 5, in township 15 north, of range 13 east of the 6th principal meridian; that there are no improvements or buildings on said land, but nearly the entire land is under cultivation and yields an annual income of about $100; that said minors have no other means of support, except as furnished by your petitioner, who is the grandfather of said minors; that there is a large sum against said land for taxes assessed thereon for several years, for which said land has been sold by the county treasurer of said Douglas county and which is subject to redemption; that the annual taxes of levy against said land is about the sum of $50; that the value of said land is about the sum of $1,600; that said minors have no other means with which to redeem said land from sale for said delinquent taxes, nor pay such annual taxes; that the whole amount required to satisfy said delinquent and other taxes is about the sum of $850. Your petitioner therefore asks the court to grant your petitioner a license to sell such land, or such portion thereof as may be sold separately without injury, to pay said delinquent and other taxes, and for the support and education of said children, or that said court make an order authorizing your petitioner to raise said money by a mortgage on said land, as shall to said court appear for the best interest of all persons interested in said land.

"RICHARD HOGEBOOM."

"I, Richard Hogeboom, depose and say I am the guardian named in the forgeoing petition, and know all the facts set forth therein personally, and that the same are true.   RICHARD HOGEBOOM.

"Signed in my presence and sworn to before me this 30th day of Jûne, A. D. 1883.   WM. H. IJAMS, *Clerk.*"

It will be noticed that this petition is verified positively. Pursuant to this application, notice of its pendency was given by publication, and at the hearing he was licensed to mortgage the land, which he did, securing a loan for $1,000. The mortgage recites the proceedings of the court, the granting of the license, and is signed by plaintiff in his capacity as guardian of the defendants. The mortgage was afterwards foreclosed, but only one-fourth of the land sold under the decree, the amount realized from such sale being $3,000, of which sum there remained, after the satisfaction of the decree in the foreclosure suit, the sum of $1,771.51, which was ordered by the court to be paid to plaintiff as the guardian of defendants, and which he received and receipted for as such guardian. The $1,000, the proceeds of the loan the payment of which this mortgage was given to secure, were expended in satisfying the claim of one Wilson Reynolds in the sum of $925, delinquent taxes and interest, Reynolds having received a tax deed for the land. On payment of the above consideration he and his wife executed a quitclaim deed of the land to these defendants as grantees. There is further evidence detailing conversations had with the plaintiff by witnesses in which he made statements regarding the ownership of the land, recognizing the defendants' interest as claimed in their answer. This is a summary of the salient points in the testimony. There are other and further facts and minor details of the evidence which we will not quote, but a careful perusal, analysis, and consideration of all the facts and circumstances disclosed in the testimony, attaching and allowing due weight to all the acts and statements of all

the parties involved or concerned in the transaction respecting this land from its inception to its close, as set forth in the record before us, satisfies us that the conclusion arrived at by the trial judge and judgment based thereon were true and just and supported by the weight of the evidence; and, although the evidence may be truly said to be conflicting, we can discover no valid reason for disturbing them.

AFFIRMED.